Filed 5/20/22  In re J.C. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re J.C. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. J.C., Defendant and Appellant. | E077768 (Super. Ct. Nos. J288258 & J288260) OPINION |

APPEAL from the Superior Court of San Bernardino County.  Christopher B. Marshall, Judge.  Affirmed in part, reversed and remanded with directions in part.

Donna B. Kaiser, under appointment by the Court of Appeal, for Defendant and Appellant.

Steven O'Neill, Interim County Counsel, and David Guardado, Deputy County Counsel, for Plaintiff and Respondent.

1

## I.

## INTRODUCTION

J.C. (Father) and F.Y. (Mother) are the parents of seven-year-old Joe.C., a girl born in May 2014, and four-year-old Jos.C., a boy born in August 2017.[1] Father appeals from the juvenile court's jurisdictional (Welf. & Inst. Code,[2] § 300, subd. (b)) and dispositional (§ 361) orders only as to him. He does not challenge the jurisdictional and dispositional orders as to Mother. Father contends that there was insufficient evidence to support the juvenile court's finding sustaining the petition against him under section 300, subdivisions (b). He also contends that the juvenile court abused its discretion in ordering random substance abuse testing as part of his case plan. We disagree with Father's first claim of error, but agree that the court erred in ordering Father to undergo random *drug* (as opposed to alcohol) testing as part of his family maintenance case plan.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

The family came to the attention of CFS on February 4, 2021, based on allegations relating to Mother's general neglect of the children, Mother's history of abusing drugs, Mother engaging in domestic violence, and Mother's physical abuse of the children. It

---

[1] Mother is also a parent of six-year-old J.M.C. (J.), a boy born in March 2015. J.'s father is L.P. Neither Mother nor L.P. are parties to this appeal. J. is also not a subject of this appeal.

[2] All future statutory references are to the Welfare and Institutions Code unless otherwise stated.

2

was reported that when a paternal aunt of J., who was then five years old, went to pick him up from Mother's residence, the child was left home alone. In addition, J. was wearing adult clothing, smelled bad, and was complaining of being hungry. At that time, Father's children, Jos. and Joe., were not at the residence as they resided with Father.

When the social worker spoke with Father, he stated that his children had been in his care since November 2020. He explained that he had taken custody of the children due to concerns related to Mother's drug use and unstable lifestyle. Specifically, Father stated "'I took my children because they were living in an unhealthy environment, very unsafe, my daughter wasn't attending school, and she was not providing their basic needs.'" He also reported "'my daughter would tell me, when I would pick them up on the weekend.'" He added that the apartment had become a "party house" and that Joe.'s reporting of the conditions in the home led him to take his children out of Mother's home. Father noted that he had ended his relationship with Mother three years prior to February 2021, had left Mother to reside in his apartment with the children, and was in the process of obtaining custody of his children through the family law court but was unable to serve Mother with family law paperwork due to her whereabouts being unknown to him.

Joe. confirmed Mother's ongoing drug use, acts of domestic violence perpetrated on the maternal grandmother and Father, and unsafe lifestyle. Joe. also described physical abuse by Mother, which left her with black eyes and other bruises, and noted being afraid of Mother. J. also reported being hit by a belt by Mother as a form of

3

discipline. Mother's whereabouts were unknown and a warrant was obtained to detain the children from Mother with Joe. and Jos. remaining in Father's care.

On February 23, 2021, petitions were filed on behalf of the children pursuant to section 300, subdivisions (a) (serious physical harm), (b) (failure to protect) and (g) (no provision for support). The petitions alleged a number of allegations relating to Mother's drug use, physical abuse, domestic violence, and unstable lifestyle. As to Father, the petitions alleged one allegation against Father under section 300, subdivision (b), namely that Father knew or should have known of Mother's abuse of the children but failed to intervene to protect the children and continued to allow the children to reside in Mother's home and allowed Mother to have unsupervised access to the children.

At the February 24, 2021 detention hearing, the juvenile court formally detained the children from Mother and maintained them in Father's home. The court ordered Father not to allow Mother in the home or to have unsupervised access to the children. The court provided Mother with supervised visits but ordered Father not to supervise her visitations with the children.

CFS recommended that the allegations in the petition be sustained, the children be removed from Mother and maintained with Father, and that services be provided to the parents. When Joe. was interviewed again, she recanted her prior statements regarding her treatment in Mother's care. She also denied witnessing any domestic violence, being left alone by Mother, and drug use by Mother. Contrary to her prior statement, she also reported feeling safe with Mother. J. reported witnessing domestic violence perpetrated

4

against Mother by her boyfriend, as well as Mother's use of substances in his presence. J. also continued to state that Mother had hit him and left bruises, but denied witnessing his siblings get hit.

When the social worker interviewed Father again, he denied failing to protect his children and asserted that he and Mother had broken up in March 2020, which was contrary to his prior statement that his relationship with Mother ended three years prior. He reported that he was paying Mother child support, as well as for her and the children to live in the apartment. Once Mother moved in with her new boyfriend, Father, however, notified Mother that he would no longer be paying the rent. He noted that when he picked up his children, he observed numerous people present in Mother's home "partying and drinking" and informed Mother that he was going to take his children. Mother arranged for the children to be with Father during the week, with Mother having the children on weekends. Father asserted that the arrangement worked for a few weeks but Mother's lifestyle required that he have sole custody of the children. He thereafter made efforts to seek custody through the family law court but was unable to serve Mother with paperwork. Father denied that Mother engaged in domestic violence, or that Mother has ever left the children without provisions for their care.

Father's criminal history consisted of convictions for a vehicle hit and run resulting in injury or death in 2007, public intoxication in 2014, and driving under the influence with a blood alcohol content over .08 percent in 2015. As a result, CFS recommended that Father's case plan include random drug testing and a substance abuse

program if Father tested positive. His case plan also consisted of individual counseling and parenting education.

The contested jurisdictional/dispositional hearing was held on September 17, 2021. Mother and Father were present telephonically. They did not submit additional evidence and proceeded with argument. Father's counsel argued that Father had never personally witnessed Mother's behaviors, but removed the children from what he believed to be an unhealthy home environment and made an effort to seek custody of the children by filing family law paperwork in December 2020. CFS's counsel asserted that Father was "clearly aware" of Mother's conduct and continued to leave the children in Mother's care, and that although he made some efforts to intervene until after some time, he left the children at risk for Mother to "come and remove them from his custody by not following through with the family law case." The juvenile court found that CFS had met its burden and found true the allegations in the petitions.

Regarding disposition, Father agreed with the provisions of family maintenance services, however, objected to the inclusion of substance abuse testing as part of his case plan. Father's counsel argued that the criminal history related to alcohol abuse and there was no evidence of any such current concerns, nor were there any allegations that Father suffered from substance abuse issues. CFS's counsel responded that Father's case plan should be approved as recommended, that "[a] parent's actions need not lead to removal to place a child at risk," and that Father's criminal history suggested substance abuse testing was necessary. The juvenile court found the substance abuse testing component

appropriate as in the children's and Father's own best interests. The court thereafter adopted findings and orders recommended by CFS, removed the children from Mother's care, and ordered that they be maintained with Father. Mother and Father were provided with services and ordered to participate. Father timely appealed.

III.

DISCUSSION

A.     *Jurisdictional Findings*

The juvenile court assumed jurisdiction based on findings against both Mother and Father, but Mother has not appealed, and Father does not challenge the jurisdictional findings concerning her. CFS thus contends the jurisdictional determinations found as to Mother are sufficient to support jurisdiction over the children. (See *In re Briana V.* (2015) 236 Cal.App.4th 297, 308 ["'[A] jurisdictional finding good against one parent is good against both.'"]; *In re I.A.* (2011) 201 Cal.App.4th 1484, 1492 ["an appellate court may decline to address the evidentiary support for any remaining jurisdictional findings once a single finding has been found to be supported by the evidence"].) CFS also asserts that because we cannot grant Father effective relief, Father's challenge is an attempt to obtain an opinion on an abstract proposition. (See *In re I.A.*, *supra*, at p. 1490.)

Under the doctrine of justiciability, courts generally do not act upon or decide moot questions or abstract propositions, nor do they issue advisory opinions. (*In re I.A.*, *supra*, 201 Cal.App.4th at pp. 1490-1491.) "An important requirement for justiciability

7

is the availability of 'effective' relief—that is, the prospect of a remedy that can have a practical, tangible impact on the parties' conduct or legal status." (*Id*. at p. 1490.) "For this reason, an appellate court may decline to address the evidentiary support for any remaining jurisdictional findings once a single finding has been found to be supported by the evidence" or is unchallenged. (*Id*. at p. 1492.)

"As a general rule, a single jurisdictional finding supported by substantial evidence is sufficient to support jurisdiction and render moot a challenge to the other findings." (*In re M.W.* (2015) 238 Cal.App.4th 1444, 1452.) This is because any decision as to the other findings will not reverse the order of jurisdiction. (*In re Briana V.*, *supra*, 236 Cal.App.4th at p. 308.) However, we retain the discretion to consider the merits of a parent's appeal when the juvenile court's jurisdictional finding, "'(1) serves as the basis for dispositional orders that are also challenged on appeal [citation]; (2) could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings [citations]; or (3) "could have other consequences for [the appellant], beyond jurisdiction" [citation].'" (*Id*. at p. 309; accord, *In re Drake M.* (2012) 211 Cal.App.4th 754, 762-763.)

Father urges us to exercise our discretion to consider the merits of his appeal because the findings are prejudicial to him and could potentially impact future dependency proceedings, noting the allegation sustained against him would mean the difference between him being an "'offending,'" as opposed to a "'non-offending,'" parent. However, our review of the failure to protect finding against Father has no

8

bearing on whether he is considered an offending or nonoffending parent.  (See *In re Drake M.*, *supra*, 211 Cal.App.4th at p. 763.)  A distinction between an offending versus non-offending is a consideration only in determining whether to remove a child from parental custody.  (§ 361 subd. (c)(1).)

In this case, the children were not removed from Father's custody.  Hence, regardless of the classification of Father as an "offending" or "non-offending" parent, the end result would be the same.  Furthermore, Father does not identify how the finding will prejudice him in future dependency proceedings, and we fail to identify any potential prejudicial effect on our own.  (See *In re I.A.*, *supra*, 201 Cal.App.4th at pp. 1493-1495 [dismissal of a dependency appeal is appropriate when the appealing parent fails to suggest "a single specific legal or practical consequence" resulting from the challenged jurisdictional finding].)  We therefore decline to exercise our discretion to review the juvenile court's jurisdictional finding against Father.

Even if we did, we find substantial evidence supports the jurisdictional finding against Father.  In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings, we determine if substantial evidence, contradicted or uncontradicted, supports them.  (*In re R.T.* (2017) 3 Cal.5th 622, 633.)  Under this standard of review, we examine the whole record in a light most favorable to the findings and conclusions of the juvenile court and defer to the lower court on issues of credibility of the evidence and witnesses, resolving all conflicts in support of the determination and

9

indulging all legitimate inferences to uphold the juvenile court's ruling. (*In re Joaquin C.* (2017) 15 Cal.App.5th 537, 560; *In re I.J.* (2013) 56 Cal.4th 766, 773.)

A juvenile court may determine a child is subject to the court's jurisdiction under section 300, subdivision (b) if it finds by a preponderance of the evidence that "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness," as a result of a parent's failure or inability to adequately supervise or protect the child, a parent's failure to provide the child with adequate food, clothing, shelter, or medical treatment, or a parent's inability to care for the child due to the parent's mental illness, developmental disability, or substance abuse. (§ 300, subd. (b)(1).) "The court need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child. [Citations.] The court may consider past events in deciding whether a child presently needs the court's protection." (*In re N.M.* (2011) 197 Cal.App.4th 159, 165.)

Here, there is substantial evidence to support the conclusion that Father knew, or should have known, the children were being abused or neglected by Mother, but failed to intervene to protect the children, and continued to allow the children to reside in the home and have unsupervised access to the children. Father himself stated that he had taken custody of the children due to concerns related to Mother's drug use and unstable lifestyle. He knew that Mother was living in an unhealthy and unsafe environment, that his daughter was not attending school, and that Mother was not providing for the children's basic needs. He explained that his daughter Joe. told him what was occurring

10

in Mother's home and that the home had become a "'party house.'" In fact, Father's awareness of the conditions in Mother's home led him to take his children out of the home. Joe. confirmed Mother's ongoing drug use, acts of domestic violence on the maternal grandmother and Father, and unsafe lifestyle. Joe. also described, and her half-brother J. confirmed, the physical abuse inflicted by Mother, noting the marks and bruises left by Mother and being afraid of Mother.

Moreover, although he was aware of Mother's neglect of the children and the conditions in Mother's home, Father did not seek legal custody of his children until a considerable time after he became aware of the concerns. Father had separated from Mother three years prior to CFS's intervention, but did not seek custody of his children until December 2020. Father's hesitancy to take action to protect his children and his later minimization of Mother's treatment of the children showed that Father did not understand the seriousness of the risk Mother posed to the children.

We find substantial evidence in the record to support the allegation that Father knew or should have known of the treatment of his children by Mother but failed to intervene to protect them.

B. *Drug Testing*

Father also asserts that the juvenile court abused its discretion in ordering random substance abuse testing as part of his case plan because he "had no issues with alcohol or drugs and the dependency was not based on any issues as to him regarding alcohol or drugs." We agree as to drug testing, but disagree as to alcohol testing.

11

A juvenile court has broad authority to "make any and all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of" a dependent child. (§ 362, subd. (a); see *In re K.T.* (2020) 49 Cal.App.5th 20, 24.) This includes directing reasonable orders to the parent of the dependent child, "including orders 'to participate in a counseling or education program.'" (*In re Daniel B.* (2014) 231 Cal.App.4th 663, 673; see § 362, subd. (d).) "'The program in which a parent or guardian is required to participate shall be designed to eliminate those conditions that led to the court's finding that the child is a person described by Section 300.'" (*In re K.T.*, *supra*, at p. 24; see § 362, subd. (d).)

"The court's broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accord with this discretion, permits the court to formulate disposition orders to address parental deficiencies when necessary to protect and promote the child's welfare, even when that parental conduct did not give rise to the dependency proceedings." (*In re K.T.*, *supra*, 49 Cal.App.5th at p. 25; see *In re Briana V.*, *supra*, 236 Cal.App.4th at p. 311 ["At disposition, the juvenile court is not limited to the content of the sustained petition when it considers what dispositional orders would be in the best interests of the children. [Citations.] Instead, the court may consider the evidence as a whole."].) We review the juvenile court's dispositional case plan for an abuse of discretion. (*In re D.P.* (2020) 44 Cal.App.5th 1058, 1071; *In re K.T.*, *supra*, at p. 25; *In re Briana V.*, *supra*, at p. 311.) "A juvenile court abuses its discretion

if its decision is arbitrary, capricious or patently absurd." (*In re A.B.* (2014) 225 Cal.App.4th 1358, 1366.)

The juvenile court record discloses Father's drug-related convictions for public intoxication in 2014 and driving under the influence with a blood alcohol content over .08 percent in 2015. This evidence, while not overwhelming, certainly supports a reasonable inference Father has had an alcohol abuse problem in the past. This evidence coupled with his failure to protect the children from Mother and recognize the risks to the children in Mother's home which led to the detention of the children are minimally sufficient to justify the order for alcohol testing. Thus, we cannot say the order was abuse of discretion.

However, there is no evidence in the record to suggest Father had issues with drugs. (Compare *In re D.P.*, *supra*, 44 Cal.App.5th at pp. 1071-1072 [juvenile court did not abuse its discretion in ordering the mother to participate in "a full drug and alcohol program with aftercare as well as a 12-step program" because the record showed the mother "had persistent issues with alcohol that contributed to dangerous manic episodes in [her child's] presence"].) There is no evidence in this record to demonstrate Father had issues with drugs or that any purported use impacted his children's well-being. It is CFS's initial burden to demonstrate the need for reunification orders like random drug testing. CFS must present some competent evidence an order for testing is warranted and absent such evidence, Father does not have the burden to disprove or deny he uses drugs.

Thus, while evidence of a flat denial of drug use by Father would have strengthened his position, it is not dispositive.

In sum, while there is evidence to order random alcohol testing, there is no evidence to support the drug testing order as a component of Father's case plan. In our view there is simply no competent and reliable evidence in the record to justify the court's exercise of discretion in ordering Father to submit to random drug testing. Accordingly, we reverse that component of Father's case plan.

IV.

DISPOSITION

The dispositional order requiring Father to submit to random alcohol testing is affirmed, and the order requiring Father to submit to random drug testing is reversed. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON_____
J.

We concur:

RAMIREZ_____
P. J.

SLOUGH_____
J.

14